Barbour, C. J. (dissenting).
As there is a limit to the jurisdiction and powers of all courts in regard to the granting of injunctions, so there are bounds which no act of congress or of state legislatures can properly pass. An act of a state legislature, for instance, which should in terms authorize a state court to enjoin a circuit or district court of the United States, against proceeding with a cause before it, or from doing any act whatever, would be a nullity; and so as to an act of congress that should attempt to confer power upon the federal courts to enjoin those of a state. This principle was recognized by congress in the act of 1793. The state and federal governments are, within their respective spheres, each sovereign and independent of the other, and no part of the governmental machinery of either can legally be controlled or interfered with by the legislatures or courts of the other. It is true that a different view of the powers and rights of the two classes of governments in this regard appears to have recently been taken by high federal officials, and that an actual existing state govern *370 ment has, in effect, been crushed out and annihilated by means of writs of injunction issued by a district court of the United States, but that act, there can be no doubt, was a monstrous usurpation, against which the reason of every sound lawyer revolts.
District courts of the federal government may, in bankruptcy cases, enjoin the parties before them from proceeding in actions in other U. S. courts or the courts of states; and so state courts, of equity jurisdiction may, under the common law, in like manner, and to the same extent, enjoin their suitors against proceeding in the federal courts,, or those of other States. The rules of comity, however, which have heretofore existed between the tribunals of the respective governments, together, perhaps, with a prudent consideration of the lex talionis, have prevented the exercise of those powers except in few and rare instances. But, neither congress, nor any federal court of original jurisdiction, has any legal authority or right to interfere with, or control, a state court, or to inhibit the execution of its process by the officers appointed by state law for that purpose. To hold otherwise would be to concede that the federal government may enact such laws, or establish such rules of practice, as will work the utter extinction of every state court and state government. It was upon that ground that the act passed during the war, requiring the payment of a stamp duty upon the initiatory process in suits in state courts, was held by those tribunals, with remarkable unanimity, to be void, although congress was empowered by the constitution to levy taxes, etc.; for it was seen that if the power of the federal government to interfere thus with the process of state courts was to be admitted, its legal right to tax such courts out of existence must necessarily be conceded. The injunction of the district court, which in effect required the sheriff to abstain from obeying the state law and the legal command of this court, *371 was therefore wholly inoperative and void in so far, at least, as regards the sheriff’s claim that such injunction justifies him in refusing to obey the precept and perform his official obligation. The federal government has no more legal or constitutional power, either through its courts or otherwise, to thus control the ultimate process of a state court or prohibit its execution, than the government or court of a state has to enjoin a United States marshal against the execution of process placed in his hands by a federal court. Where the sheriff has made a levy under an execution, prior to the proceedings in bankruptcy, the lien thus acquired in favor of the judgment creditor cannot be divested by those proceedings; and it may be added, that no levy can be made after the judgment debtor has been declared a bankrupt or a receiver has been appointed, because the bankrupt is then ipso facto divested of all his estate and property subject to execution.
Many cases may be supposed in which the court might properly, and would, to save a sheriff from possible harm, refuse to make an order of the character of that appealed from in this case ; and indeed there are hundreds of precedents of that description. But, upon a question involving its jurisdiction and powers in a matter essential to its very existence, the high duty which the court owes to the State that created it, and whose rights as a government it is bound to guard and preserve, requires the assertion and exercise of such powers as are necessary to protect itself and its suitors against illegal and dangerous usurpations. I should find no difficulty, therefore, in arriving at the conclusion that the order appealed from ought to be affirmed, even though the sheriff should be left to defend himself before the district court for an actual violation of its injunction.
In the case before us, however, the sheriff will expose himself to no hazard of the character suggested. For the papers show that the property of the judgment debtor *372 was sold by the sheriff, and the entire amount of the execution was collected by him on or before the 21st of November, 1871. The defendant in the execution and bankrupt, therefore, was wholly divested of all ownership in the money paid over by him to the sheriff, and in the property sold by the latter, eight days before the issuing of the injunction which required the sheriff to abstain from making any transfer of the property of such defendant, and such money had become the property of the judgment creditors ; and it follows that when the injunction was served, the sheriff held no property in his hands belonging to the bankrupt which had been seized or taken by him under the execution. He had nothing in his hands but money derived from sales and collections, and that belonged to the creditors in the judgment.
The order appealed from should be affirmed, with costs.